## UNITED STATES DISTRICT COURT
## SOURTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZACHARY CLARK, | |
| Plaintiff, | Case No. |
| v. | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| DRIVEN BRANDS HOLDINGS INC., JONATHAN FITZPATRICK, MICHAEL F. DIAMOND, MICHAEL BELAND, DANIEL RIVERA, and REBECCA FONDELL | |
| Defendants. | Jury Trial Demanded |

Plaintiff Zachary Clark ("Plaintiff"), by and through Plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to Plaintiff and based the investigation undertaken by Counsel, which included, but was not limited to, the review and analysis of: (i) public filings made by Driven Brands Holdings Inc. ("Driven Brands" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (ii) press releases and other public statements issued by Defendants; (iii) research reports issued by securities and financial analysts; (iv) media and news reports and other publicly available information concerning Driven Brands and Defendants; (v) transcripts of Driven Brands' earnings and other conference calls with investors and analysts; and (vi) information publicly available regarding Driven Brands on the internet.

## I.     NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons who purchased or otherwise acquired Driven Brands common stock between May 9, 2023, and February 24, 2026, inclusive (the "Class Period"), against Driven Brands and certain of its officers and directors. This action alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, by issuing false and/or misleading statements and/or omitting to disclose material information necessary to make statements made not misleading.

2.     Driven Brands' stock trades on NASDAQ under the ticker symbol "DRVN."

3.     Driven Brands is the largest automotive services company in North America, operating approximately 4,900 locations across more than 15 countries. The Company provides

maintenance, car wash, collision, and glass services, and operates as a holding company for major brands like Take 5 Oil Change, Meineke Car Care Centers, Maaco, and Auto Glass Now.

4.     Defendants misled investors as to the Company's financial condition and the effectiveness of its internal controls over financial reporting through a series of inaccurate financial reports filed with the Securities and Exchange Commission ("SEC") from May 9, 2023, to November 5, 2025. Among many other errors, the Company's balance sheets contained an unreconciled cash balance originating in 2023 which resulted in revenue and cash being overstated in 2023 and 2024, and operating expenses being understated over the same period.

5.     The Company had previously announced that it would file its year-end report for fiscal year 2025 on Form 10-K with the SEC prior to market open on February 25, 2026.

6.     Instead, at or around 7:15am EST on February 25, 2026, the Company filed a Current Report on Form 8-K ("February 25, 2026 8-K") announcing that "[o]n February 23, 2026, the Audit Committee of the Board of Directors, after consultation with the Company's management, concluded there were material errors in our previously issued consolidated financial statements" concerning the Company's financial reporting for fiscal years 2023 and 2024. As such, the Company's "consolidated financial statements for each of the quarterly and year-to-date periods within fiscal year 2024 as well as the quarterly and year-to-date periods" through September 27, 2025 "should not be relied upon and required restatement." Accordingly, the Company would have to restate approximately two years-worth of its financial reporting.

7.     The February 25, 2026 8-K identified at least ten (10) different categories of errors that pervaded the Company's financial reporting: (i) errors relating to the recording of leases which primarily impacted the right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024, and September 27, 2025; (ii) errors in reporting opening

and ending cash balances and operating cash flows, which resulted in overstatements of cash and revenue and understatement of selling, general and administrative expense in consolidated statement of operations for fiscal years 2023 and 2024; (iii) errors in reporting supply and other expenses as company-operated store expenses in fiscal years 2023 and 2024; (iv) errors relating to income tax provision; (v) errors relating to supply and other revenue; (vi) errors relating to fixed assets; (vii) errors relating to cloud computing; (viii) errors relating to lease cash applications; (ix) errors relating to balance sheet and income statement misclassifications; and (x) errors related to improperly recognized revenue in Driven Brands' ATI business primarily related to fiscal year 2025.

8.     Additionally, the February 25, 2026 8-K disclosed that the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP, had reported that Driven Brands' "financial statements and internal control over financial reporting should not be relied upon." The Company's management similarly conceded that there were "material weaknesses in the Company's internal control over financial reporting resulting in the conclusion that our internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

9.     Market experts were shocked by the sweeping inaccuracies in Driven Brands' financial reporting, which implicated nearly three years' worth of financial statements. Goldman Sachs lowered its price target on Driven Brands from $19 to $16.50 on February 25, 2026. Piper Sandler also lowered its price target, downgraded Driven Brands to "Neutral," and wrote that the stock would be "In the Penalty Box for a While." Commenting on the "magnitude of the impending restatement," Canaccord Genuity analyst Brian C. McNamara wrote: "multiples are predominantly driven by three factors: (1) growth, (2) relative predictability of results, and most importantly (3)

investor confidence, and the market is questioning all three today…. it will take a significant amount of time for the company to regain the market's trust."

10.    William Blair analysts released a report on February 25, 2026, discussing the Company's announcement. "The lack of stability in the finance department and unreliability around reporting has been a long-standing pain point for the stock," the analysts observed. "We expect this to come as a major blow to the company's efforts to rebuild credibility here."

11.    Benchmark Equity Research also commented on the "Earnings Fake-out" on February 25, 2026, explaining: "DRVN has been working through a restructuring after the sale of its domestic and international car wash assets, and this quarter was supposed to be the first under its new segment reporting. While we expected the fog to lift on DRVN this year, instead we have less clarity with an extended timeline… digesting the release leads us to think that margins and growth figures will be impacted…"

12.    Driven Brands' stock declined nearly 40% on this news, from a close of $16.61 per share on February 24, 2026, to an opening price of $9.99 per share on February 25, 2026.

## II.    JURISDICTION AND VENUE

13.    The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

15.    In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the mails, interstate telephone communications, and the facilities of the NASDAQ

Stock Market, a national securities exchange based in this District. In connection with the acts and omissions at issue in this action, this Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation with sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Driven Brands at all relevant times traded on the NASDAQ Stock Market, and substantial acts and conduct in furtherance of the violation of law complained of herein, including the sale of securities and the dissemination to the public of materially false or misleading information, occurred in and/or were issued from this District.

### III.    PARTIES

17.     Plaintiff Zachary Clark purchased Driven Brands stock during the Class Period, as described in the attached certification, and suffered damages as a result of Defendants' fraud as alleged herein.

18.     Defendant Driven Brands, is incorporated in the State of Delaware and has its headquarters in Charlotte, North Carolina. The Company's stock trades on the NASDAQ under the ticker symbol "DRVN."

19.     Defendant Jonathan Fitzpatrick was the Chief Executive Officer of Driven Brands from 2012 through May 9, 2025.

20.     Defendant Michael Beland was the Senior Vice President and Chief Accounting Officer of Driven Brands from July 2021 to January 3, 2025.

21.     Defendant Michael F. Diamond was the Chief Financial Officer of Driven Brands from August 9, 2024, through the end of the Class Period. Additionally, he served as the interim

principal accounting officer for the Company following Beland's resignation in January 2025, and before Defendant Fondell assumed that role in May 2025.

22.    Defendant Daniel Rivera was the President and Chief Executive Officer of Driven Brands from May 9, 2025, through the end of the Class Period.

23.    Defendant Rebecca Fondell was the Senior Vice President and Chief Accounting Officer of Driven Brands from May 9, 2025, through the end of the Class Period.

24.    Collectively, Defendants Fitzpatrick, Beland, Diamond, Rivera, and Fondell are referred to throughout this complaint as the "Individual Defendants."

25.    The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors. Each of the Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them, but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed and were being concealed from the public and that the positive representations being made were false and misleading.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Defendants' False and Misleading Statements and/or Omissions

#### a.  Q1 2023 10-Q

26.     On May 9, 2023, Driven Brands filed its quarterly report for the period ended April 1, 2023 with the SEC on Form 10-Q ("Q1 2023 10-Q"). Defendants Fitzpatrick and Beland signed the Q1 2023 10-Q, which reported that "Revenue increased 20% to $562 million, driven by same-store sales and net store growth." Specifically, the Q1 2023 10-Q reported $562.467 million in revenue for the three months ended April 1, 2023.

27.     The Q1 2023 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $260.773 million and an ending balance of $226.759 million for the three months ended April 1, 2023:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 190,841 |
| Cash included in advertising fund assets, restricted, end of period | 35,126 |
| Restricted cash, end of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 226,759 |

28.     The Q1 2023 10-Q also reported $112.328 million in "Selling, general, and administrative expenses" for the three months ended April 1, 2023.

29.     The Q1 2023 10-Q further reported $243.409 million in Company-operated store expenses for the three month period ended April 1, 2023.

**b.  Q2 2023 10-Q**

30.     On August 9, 2023, Driven Brands filed its Quarterly Report for the period ended July 1, 2023 with the SEC on Form 10-Q, reporting the Company's Q2 2024 financials ("Q2 2023 10-Q"), signed by Defendants Fitzpatrick and Beland. Driven Brands highlighted that "Revenue

increased 19% to $607 million, driven by same-store sales and net store growth" in the quarter.
Specifically, the Q2 2023 10-Q reported $606.851 million in total net revenue for the three months
ended July 1, 2023.

31.    The Q2 2023 10-Q also recorded, for cash, cash equivalents, restricted cash, and
cash included in advertising fund assets, a beginning balance of $260.773 million and an ending
balance of $251.471 million for the six months ended July 1, 2023:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 212,123 |
| Cash included in advertising fund assets, restricted, end of period | 38,691 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $  251,471 |

32.    The Q2 2023 10-Q reported $96.815 million in "Selling, general, and
administrative expenses" for the three months ended July 1, 2023.

33.    The Q2 2023 10-Q further reported $257.040 in Company-operated store expenses
for the three months ended July 1, 2023.

c.  **Q3 2023 10-Q**

34.    On November 9, 2023, Driven Brands filed its quarterly report for the period ended
September 30, 2023 with the SEC on Form 10-Q ("Q3 2023 10-Q"), signed by Defendants
Fitzpatrick and Beland. The Q3 2023 10-Q highlighted: "Revenue increased 12% to $581 million,
driven by same-store sales and net store growth." Specifically, Driven Brands reported $581.034
million in revenue for the three months ended September 30, 2023.

35.    Q3 2023 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $260.773 million and an ending balance of $259.814 million for the nine months ended September 30, 2023:

| | |
|---|---:|
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 211,280 |
| Cash included in advertising fund assets, restricted, end of period | 47,877 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 259,814 |

36.    Under "Operating Expenses" the Q3 2023 10-Q reported $123.012 million in "Selling, general, and administrative expenses" for the three months ended September 30, 2023.

37.    The Q3 2023 10-Q further reported $262.282 million in Company-operated store expenses for the three months ended September 30, 2023.

**d.  2023 10-K/A**

38.    On February 28, 2024, Driven Brands filed an amended Form 10-K annual report with the SEC for the fiscal year ended December 30, 2023 ("2023 10-K/A"), signed by Defendant Beland. The 2023 10-K/A reported $2.304 billion in total net revenue for fiscal year 2023.

39.    Driven Brands also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, beginning and ending balances of $260.773 million and $215.716 million for fiscal year 2023:

| | |
|---|---|
| Cash and cash equivalents, beginning of period | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 32,871 |
| Restricted cash, beginning of period | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 260,773 |
| Cash and cash equivalents, end of period | 176,522 |
| Cash included in advertising fund assets, restricted, end of period | 38,537 |
| Restricted cash, end of period | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $    215,716 |

40.     The 2023 10-K/A reported $443.112 in "Selling, general, and administrative expenses" for fiscal year 2023.

41.     The 2023 10-K/A further reported Company-operated store expenses of $1.004 billion for fiscal year 2023.

### e.   Q1 2024 10-Q

42.     On May 8, 2024, Driven Brands filed its quarterly report for the period ended March 30, 2024 with the SEC on Form 10-Q ("Q1 2024 10-Q"), signed by Defendants Fitzpatrick and Beland. Driven Brands represented: "We have continued to grow our base of consistent recurring revenue by adding new franchised and company-operated stores and same store sales growth. Driven Brands generated ***net revenue of approximately $572 million during the three months ended March 30, 2024***, an increase of 2% compared to the prior year, and system-wide sales of approximately $1.6 billion during the three months ended March 30, 2024, an increase of 7% from the prior year."

43.     The Q1 2024 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $215.716 million and an ending

balance of $209.632 million for the three months ended March 30, 2024, compared with beginning

and ending balances of $260.773 million and $226.759 million for the three months ended April

1, 2023:

| | | |
|---|---|---|
| Cash and cash equivalents, beginning of period | 176,522 | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 | 32,871 |
| Restricted cash, beginning of period | 657 | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 215,716 | 260,773 |
| Cash and cash equivalents, end of period | 165,513 | 190,841 |
| Cash included in advertising fund assets, restricted, end of period | 43,462 | 35,126 |
| Restricted cash, end of period | 657 | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 209,632 | $ 226,759 |

44.    Under "Operating Expenses" the Q1 2024 10-Q reported $116.402 million in

"Selling, general, and administrative expenses" for the three months ended March 30, 2024.

45.    The Q1 2024 10-Q further reported $242.053 million in Company-operated store

expenses for the three month period ended March 30, 2024.

**f.   Q2 2024 10-Q**

46.    On August 8, 2024, Driven Brands filed its Quarterly Report for the period ended

June 29, 2024 with the SEC on Form 10-Q, reporting the Company's Q2 2024 financials ("Q2

2024 10-Q"), signed by Defendants Fitzpatrick and Beland. The Company reported that it

"generated net revenue of approximately $612 million and $1.2 billion during the three and six

months ended June 29, 2024, respectively, an increase of 1% compared to the prior year

comparative periods…" Specifically, Driven Brands reported $606.851 and $611.566 million in

total net revenue for the three months ended July 1, 2023, and June 29, 2024, respectively.

47.    The Q2 2024 10-Q also recorded, for cash, cash equivalents, restricted cash, and

cash included in advertising fund assets, a beginning balance of $215.716 million and an ending

balance of $185.236 million for the six months ended June 29, 2024, and beginning and ending

balances of $260.773 million and $251.471 million for the six months ended July 1, 2023:

| | | |
|---|---|---|
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period | 215,716 | 260,773 |
| Cash and cash equivalents, end of period | 148,814 | 212,123 |
| Cash included in advertising fund assets, restricted, end of period | 32,008 | 38,691 |
| Restricted cash, end of period | 4,414 | 657 |
| Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period | $ 185,236 | $ 251,471 |

48.    The Q2 2024 10-Q reported $121.123 million in "Selling, general, and

administrative expenses" for the three months ended June 29, 2024.

49.    The Q2 2024 10-Q also reported $254.174 in Company-operated store expenses for

the three-month period ended June 29, 2024.

### g.  Q3 2024 10-Q

50.    On November 7, 2024, Driven Brands filed its Quarterly Report for the period

ended September 28, 2024 with the SEC on Form 10-Q ("Q3 2024 10-Q"), signed by Defendants

Fitzpatrick and Beland. The Company reported that it "generated net revenue of approximately

$592 million and $1.8 billion during the three and nine months ended September 28, 2024,

respectively, an increase of 2% and 1%, respectively, compared to the prior year comparative

periods…" Specifically, Driven Brands reported $581.034 million and $591.679 million in total

net revenue for the three months ended September 30, 2023, and September 28, 2024, respectively.

51.    The Q3 2024 10-Q also recorded, for cash, cash equivalents, restricted cash, and

cash included in advertising fund assets, a beginning balance of $215.716 million and an ending

balance of $249.060 million for the nine months ended September 28, 2024, and beginning and

ending balances of $260.773 million and $259.814 million for the nine months ended September

30, 2023:

| | | |
|---|---|---|
| Cash and cash equivalents, beginning of period | 176,522 | 227,110 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 | 32,871 |
| Restricted cash, beginning of period | 657 | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 215,716 | 260,773 |
| Cash and cash equivalents, end of period | 204,181 | 211,280 |
| Cash included in advertising fund assets, restricted, end of period | 40,465 | 47,877 |
| Restricted cash, end of period | 4,414 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 249,060 | $ 259,814 |

52.     The Q3 2024 10-Q reported $149.766 million in "Selling, general, and administrative expenses" for the three months ended September 28, 2024.

53.     The Q3 2024 10-Q also reported $242.073 in Company-operated store expenses for the three-month period ended September 28, 2024.

**h.  2024 10-K**

54.     Driven Brands filed its annual report for the fiscal year ended December 28, 2024 on SEC Form 10-K on February 26, 2025 ("2024 10-K"), signed by Defendants Fitzpatrick and Diamond.

55.     The 2024 10-K stated: "Our portfolio of brands continues to generate consistent recurring revenue with strong operating margins. Our network generated approximately $2.3 billion in net revenue from approximately $6.5 billion in system-wide sales in 2024" which purportedly represented "an increase of 2% compared to the prior year." Specifically, Driven Brands recorded $2.340 billion in year-end total net revenue for fiscal year 2024, compared with $2.304 billion in fiscal year 2023:

| | Year Ended | | | |
|---|---|---|---|---|
| (in thousands) | December 28, 2024 | % of Net Revenues | December 30, 2023 | % of Net Revenues |
| Franchise royalties and fees | $    188,634 | 8.1 % | $    190,367 | 8.3 % |
| Company-operated store sales | 1,544,932 | 66.0 % | 1,526,353 | 66.2 % |
| Independently-operated store sales | 212,396 | 9.1 % | 196,395 | 8.5 % |
| Advertising fund contributions | 101,316 | 4.3 % | 98,850 | 4.3 % |
| Supply and other revenue | 292,310 | 12.5 % | 292,064 | 12.7 % |
| **Total net revenue** | $ 2,339,588 | 100.0 % | $ 2,304,029 | 100.0 % |

56.    The 2024 10-K also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $215.716 million and an ending balance of $209.242 million for fiscal year 2024, and beginning and ending balances of $260.773 million and $215.716 million for fiscal year 2023:

| | | | |
|---|---|---|---|
| Cash and cash equivalents, beginning of period | 176,522 | 227,110 | 523,414 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,537 | 32,871 | 38,586 |
| Restricted cash, beginning of period | 657 | 792 | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, beginning of period** | 215,716 | 260,773 | 562,792 |
| Cash and cash equivalents, end of period | 169,954 | 176,522 | 227,110 |
| Cash included in advertising fund assets, restricted, end of period | 38,930 | 38,537 | 32,871 |
| Restricted cash, end of period | 358 | 657 | 792 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $    209,242 | $    215,716 | $    260,773 |

57.    The 2024 10-K reported $554.775 million in "Selling, general, and administrative expenses" for fiscal year 2024.

58.    The 2024 10-K also reported $993.090 in Company-operated store expenses for fiscal year 2024.

59.    The 2024 10-K reported Operating lease right-of-use assets of $1.370 billion and $1.389 billion for fiscal years 2024 and 2023, respectively, in its consolidated balance sheets.

### i.   Q1 2025 10-Q

60.    On May 8, 2025, Driven Brands filed its quarterly report for the period ended March 29, 2025, with the SEC on form 10-Q ("Q1 2025 10-Q"), signed by Defendants Fitzpatrick and Diamond. The Q1 2025 10-Q reported that "Driven Brands generated net revenue of approximately $516.2 million during the three months ended March 29, 2025, an increase of 7% compared to the prior year period…" Specifically, Driven Brands reported total revenue of $516.163 for the three months ended March 29, 2025, compared with $481.992 million for the three months ended March 30, 2024.

61.    The Q1 2025 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $209.242 million and an ending balance of $194.143 million for the three months ended March 29, 2025, and beginning and ending balances of $215.716 million and $209.632 million for the three months ended March 30, 2024:

| | | |
|---|---:|---:|
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 155,584 | 165,513 |
| Cash included in advertising fund assets, restricted, end of period | 38,227 | 43,462 |
| Restricted cash, end of period | 332 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 194,143 | $ 209,632 |

62.    The Q1 2025 10-Q reported $143.052 million in "Selling, general, and administrative expenses" for the three months ended March 29, 2025.

63.    The Q1 2025 10-Q also reported $181.866 million in Company-operated store expenses for the three-month period ended March 29, 2025.

### j.   Q2 2025 10-Q

64.    On August 7, 2025, Driven Brands filed quarterly report for the period ended June 28, 2025 with the SEC on Form 10-Q ("Q2 2025 10-Q"), signed by Defendants Rivera and Fondell. The Q2 2025 10-Q stated: "Driven Brands generated net revenue of approximately $551 million and $1.1 billion during the three and six months ended June 28, 2025, respectively, an increase of 6% and 7% compared to the prior year period." Specifically, Driven Brands reported $550.988 million in total net revenue for the three months ended June 28, 2025, compared with $518.796 million for the three months ended June 29, 2024.

65.    Q2 2025 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $209.242 million and an ending balance of $205.903 million for the six months ended June 28, 2025, compared with an opening balance of $215.716 million and an ending balance of $185.236 million for the six months ended June 29, 2024:

| | | |
|---|---|---|
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 166,131 | 148,814 |
| Cash included in advertising fund assets, restricted, end of period | 39,438 | 32,008 |
| Restricted cash, end of period | 334 | 4,414 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $ 205,903 | $ 185,236 |

66.    The Q2 2025 10-Q reported $183.118 million in "Selling, general, and administrative expenses" for the three months ended June 28, 2025.

67.    The Q2 2025 10-Q also reported $190.396 million in Company-operated store expenses for the three months ended June 28, 2025.

16

k.  **Q3 2025 10-Q**

68.     On November 5, 2025, Driven Brands filed its quarterly report for the period ended September 27, 2025 on Form 10-Q with the SEC ("Q3 2025 10-Q"), signed by Defendants Rivera and Fondell. The Q3 2025 10-Q reported "net revenue of approximately $536 million and $1.6 billion during the three and nine months ended September 27, 2025, respectively, an increase of 7% and 7% compared to the prior year period…" Specifically, the Q3 2025 10-Q reported total net revenue of $535.684 million for the three months ended September 27, 2025, compared with $502.339 million for the three months ended September 28, 2024.

69.     The Q3 2025 10-Q also recorded, for cash, cash equivalents, restricted cash, and cash included in advertising fund assets, a beginning balance of $209.242 million and an ending balance of $203.724 million for the nine months ended September 27, 2025, compared with an opening balance of $215.716 million and an ending balance of $249.060 million for the nine months ended September 28, 2024:

| | | |
|---|---:|---:|
| Cash and cash equivalents, beginning of period | 169,954 | 176,522 |
| Cash included in advertising fund assets, restricted, beginning of period | 38,930 | 38,537 |
| Restricted cash, beginning of period | 358 | 657 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, beginning of period** | 209,242 | 215,716 |
| Cash and cash equivalents, end of period | 162,028 | 204,181 |
| Cash included in advertising fund assets, restricted, end of period | 41,361 | 40,465 |
| Restricted cash, end of period | 335 | 4,414 |
| **Cash, cash equivalents, restricted cash, and cash included in advertising fund assets, restricted, end of period** | $  203,724 | $  249,060 |

70.     The Q3 2025 10-Q reported $145.177 million in "Selling, general, and administrative expenses" for the three months ended September 27, 2025.

71.     The Q3 2025 10-Q also reported $191.129 million in Company-operated store expenses for the three months ended September 27, 2025.

72.     The Q3 2025 10-Q further reported $570.213 million in operating lease right-of-use assets as of September 27, 2025

73.     In a section entitled "Evaluation of Disclosure Controls and Procedures," the Q3 2025 10-Q stated:

> Our management, with the participation of our CEO and CFO, has evaluated the design effectiveness of our disclosure controls and procedures (as defined in Rules 13a--15(e) and 15d--15(e) under the Exchange Act), as of September 27, 2025. The term "disclosure controls and procedures," means controls and other procedures of a company that are designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include, without limitation, controls and procedures designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the company's management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure. Management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. ***Based on their evaluation of the design effectiveness of our disclosure controls and procedures as of September 27, 2025, our CEO and CFO have concluded that as of such date, our disclosure controls and procedures were designed effectively and will provide a reasonable level of assurance***.

74.     The statements identified above in ¶¶26-73 were false and misleading and/or omitted to state material facts necessary to make them not misleading because on February 25, 2026, Driven Brands identified at least ten different categories of errors in its financial statements from fiscal 2023 through the quarter ended September 27, 2025. Specifically, Driven Brands admitted: (i) there were errors relating to the recording of leases which primarily impacted the right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024, and September 27, 2025; (ii) there were errors in reporting opening and ending cash balances and operating cash flows, which resulted in overstatements of cash and revenue and

understatement of selling, general and administrative expense in consolidated statement of operations for fiscal years 2023 and 2024; (iii) supply and other expenses were improperly presented as company-operated store expenses in fiscal years 2023 and 2024; (iv) other errors were identified relating to income tax provision; (v) supply and other revenue; (vi) fixed assets; (vii) cloud computing; (viii) lease cash applications; (ix) balance sheet and income statement misclassifications; (x) and improperly recognized revenue in Driven Brands' ATI business primarily related to fiscal year 2025.

75.     Driven Brands further admitted that its controls over financial reporting were "not effective as of December 27, 2025.

**B.     The Truth Begins To Emerge**

76.     Driven Brands informed its investors, on December 27, 2025, that it would "release its financial results for the fourth quarter and year ended December 27, 2025 before market open on February 25, 2026."

77.     Instead, on February 25, 2026, the Company filed a Form 8-K with the SEC disclosing that Driven Brands had identified at least seven different categories of "material errors" in the Company's consolidated financial statements for fiscal years 2023 and 2024, as well as in quarterly periods in 2025:

> On February 23, 2026, the Audit Committee of the Board of Directors, after consultation with the Company's management, concluded there were material errors in our previously issued consolidated financial statements for the fiscal year ended December 28, 2024 ("fiscal year 2024") and the fiscal year ended December 30, 2023 ("fiscal year 2023") contained in the Company's Annual Report on Form 10-K for the fiscal year 2024, and in our previously issued unaudited condensed consolidated financial statements for each of the quarterly and year-to-date periods within fiscal year 2024 as well as the quarterly and year-to-date periods for the periods ended September 27, 2025, June 28, 2025 and March 29, 2025, and concluded that such financial statements should not be relied upon and required restatement (the "Restatement"). Additionally, the

Report of our Independent Registered Public Accounting Firm on the financial statements and internal control over financial reporting should not be relied upon.

As of February 25, 2026, the following reflects the primary categories of errors that have been identified in connection with the preparation of the Company's Annual Report on Form 10-K for the year ended December 27, 2025 ("fiscal year 2025").

*Lease Adjustments*

Certain errors were identified relating to the completeness and accuracy of recording leases. These errors primarily impact right of use assets and right of use liabilities recorded in the consolidated balance sheet as of December 28, 2024 and September 27, 2025.

*Cash Adjustments*

Certain errors were identified relating to unreconciled differences for cash accounts primarily originating in fiscal years 2023 and earlier. The errors affect the opening and ending cash balances and operating cash flows in the consolidated statement of cash flows and result in overstatements of cash and revenue and understatement of selling, general and administrative expense in the consolidated statement of operations for fiscal years 2023 and 2024.

*Expense Classification*

During fiscal years 2023 and 2024, within operating expenses certain supply and other expenses were presented as company-operated store expenses. This error resulted in company-operated store expenses to be overstated for fiscal years 2023 and 2024 and an equal understatement of supply and other expenses in the corresponding periods. This error did not result in any change in total operating expenses.

*Other Errors*

In addition, other errors were identified that primarily relate to fiscal years 2023 or 2024 related to the income tax provision, supply and other revenue, fixed assets, cloud computing, lease cash application, and balance sheet and income statement misclassifications, as well as inappropriately recognized revenue in our ATI business primarily related to fiscal year 2025. The impact of these errors and the lease adjustments, cash adjustments, and expense classification described above will be reflected in the Company's Annual Report on Form 10-K for the fiscal year 2025.

78.    Driven Brands further disclosed: "In connection with the Restatement, management has identified material weaknesses in the Company's internal control over financial reporting

resulting in the conclusion that our internal control over financial reporting and disclosure controls and procedures were not effective as of December 27, 2025."

79.     Also on February 25 2026, Driven Brands filed a second Form 8-K with the SEC announcing that the Company would delay the filing of its Annual Report on Form 10-K for the fiscal year 2025 as a result of the need to restate its financials for fiscal years 2023, 2024, and the first three quarters of 2025.

80.     On this news, Driven Brands' stock price fell nearly 40%, from a close of $16.61 on February 24, 2026, to open at $9.99 on February 25, 2026.

### C.    Additional Scienter Allegations

81.     As alleged herein, Defendants acted with scienter in that they knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market price of Driven Brands common stock as primary violations of the federal securities laws. Defendants, by virtue of their control over, and/or receipt or modification of, the Company's allegedly materially misleading misstatements, their control over the Company's financial reporting and internal controls, and/or their associations with the Company that made them privy to confidential proprietary information concerning Driven Brands, knew of or recklessly disregarded the true facts concerning Driven Brands' financial statements.

82.     As such, the Individual Defendants knew or were reckless in not knowing of the misstated and/or undisclosed facts detailed herein.

83.    Furthermore, attached to the Q3 2025 10-Q as Exhibits 31.1 and 31.2 were, respectively, the Sarbanes-Oxley certifications of Defendants Rivera and Diamond. Therein, the Defendants Rivera and Diamond certified their responsibility for establishing, maintaining, and evaluating Driven Brands' internal controls over financial reporting:

> (4) **The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures** (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and have:

> (a) **Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant including its consolidated subsidiaries, is made known to us by others within those entities,** particularly during the period in which this report is being prepared;

> (b) **Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements** for external purposes in accordance with generally accepted accounting principles;

> (c) **Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation**; and

> (d) Disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting…

**D.    Class Action Allegations**

84.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired the common stock of Driven Brands between May 9, 2023, and February 24, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and

directors of Driven Brands at all relevant times, members of their immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest.

85.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Driven Brands shares were actively traded on the NASDAQ Stock Market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. Class members who purchased Driven Brands common stock may be identified from records maintained by Driven Brands or its transfer agent(s) and may be notified of this class action using a form of notice similar to that customarily used in securities class actions.

86.    Plaintiff's claims are typical of Class members' claims, as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal laws as complained of herein.

87.    Plaintiff will fairly and adequately protect Class members' interests and have retained competent counsel experienced in class actions and securities litigation.

88.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of fact and law common to the Class are:

      a.    whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.      whether the Defendants made statements to the investing public during the Class Period that were false, misleading, or omitted material facts;

c.      whether Defendants acted with scienter; and

d.      whether Plaintiff and the Class were damaged and the proper measure of damages.

89.     A class action is superior to all other available methods for the fair and efficient adjudication of this action because joinder of all Class members is impracticable. Additionally, the damage suffered by some individual Class members may be relatively small so that the burden and expense of individual litigation make it impossible for such members to individually redress the wrong done to them. There will be no difficulty in the management of this action as a class action.

**E.      Fraud On the Market**

90.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      The omissions and misrepresentations were material;

c.      The Company's common stock traded in efficient markets;

d.      The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock, and;

e.      Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

91.    At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services; and (iii) the Company is regularly followed by stock market analysts who publish information regarding the Company. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

92.    At all relevant times, the market for the Company's common stock was efficient for the following reasons, among others:

a.    Driven Brand's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Stock Market, a highly efficient and automated market;

b.    As a regulated issuer, Driven Brands filed periodic reports with the SEC and the NASDAQ Stock Market;

c.    Driven Brands regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.    Driven Brands was followed by numerous securities analysts employed by major brokerage firms who wrote reports which were distributed to those brokerage firms'

sales force and certain customers. Each of these reports was publicly available and entered the public marketplace.

93.    As a result of the foregoing, the market for Driven Brands' common stock reasonably promptly digested current information regarding Driven Brands from all publicly available sources and reflected such information in the price of the Company's common stock. All purchasers of Driven Brands common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices, and a presumption of reliance applies.

94.    A Class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), to the extent the claims asserted herein against Defendants are predicated upon omissions of material fact for which there is a duty to disclose.

**F.    No Safe Harbor**

95.    The statutory safe harbor or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances does not apply to any of the false or misleading statements pleaded in this Complaint. None of the statements complained of herein was a forward-looking statement. Rather, the statements were historical statements or statements of purportedly current facts and conditions at the time the statements were made.

96.    To the extent that any of the false or misleading statements alleged herein can be construed as forward-looking, those statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements.

97.     To the extent that the statutory safe harbor does not apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those statements was made, the particular speaker knew that the particular forward-looking statement was false, and the false forward-looking statement was authorized and approved by an executive officer of Driven Brands who knew that the statement was false when made.

**G.     Loss Causation**

98.     The fraud described herein was the proximate cause of declines in Driven Brands' stock price and resulting losses suffered by the Class.  Defendants' materially false and misleading statements and omissions artificially inflated and/or maintained the price of Driven Brands' stock. The artificial inflation in the Company's stock price was removed through a corrective disclosures concerning the facts concealed and/or misrepresented by the misstatements and omissions, described herein. These disclosures reduced the amount of inflation in the price of Driven Brands' publicly traded stock, causing economic injury to Plaintiff and other members of the Class.

99.     The statements and events identified in Section B *supra*, the Truth Begins to Emerge, served as partial corrective disclosures. As investors digested the partial corrective disclosures, the market began to learn that Driven Brands' financial statements were inaccurate, unreliable, and overstated.

100.     On February 25, 2026, Driven Brands' stock price opened at $9.99 per share, down from its closing price of $16.61 on February 24, 2026, a fall of nearly 40%. Investors were damaged from this partial revelation and price decline which corrected prior misstatements made by the Defendants.

## V.    COUNT I

**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

101.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

102.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

103.    Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

104.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## VI.    COUNT II

**Violation of § 20(a) of the Exchange Act
(Against the Individual Defendants)**

105.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

106.    The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents were false or misleading statements were made and other statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## VII.    PRAYER FOR RELIEF

107.    WHEREFORE, Plaintiff prays for relief and judgement, as follows:

(a)    Declaring the action to be a proper class action under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

(b)    Awarding all damages available under the Securities Exchange Act in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and experts' fees and other costs and disbursements; and

(d)    Awarding such other relief as this Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff here demands a trial by jury in this action of all issues so triable.

Dated: March 9, 2026

Respectfully submitted,

/s/ Jeffrey C. Block

**BLOCK & LEVITON LLP**
Jeffrey C. Block
260 Franklin St, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com

*Counsel for Plaintiff Zachary Clark*

**Certification Pursuant to Federal Securities Laws**

I, Zachary Clark, make this declaration pursuant to Section 27(a)(2) of the Securities act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

1. I have reviewed a Complaint against Driven Brands Holdings Inc. ("Driven Brands" or the "Company") and authorize the filing of a comparable complaint on my behalf.

2. I did not transact in Driven Brands Holdings Inc. securities at the direction of plaintiff's counsel, or in order to participate in any private action under the federal securities laws.

3. I am willing to serve as a representative party on behalf of a class of investors who purchased or otherwise acquired: Driven Brands Holdings Inc. securities during the Class Period, as specified in the Complaint; including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

4. Attached hereto as Schedule A is a list of all of my transactions in Driven Brands Holdings Inc. securities during the Class Period, as specified in the Complaint.

5. During the past three years, I have not sought to serve as a representative party on behalf of a class under federal securities laws.

6. I will not accept payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court in accordance with 15 U.S.C. 78u-4(a)(4).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ___03/08/2026_____

_____
Zachary Clark

**Schedule A**

Zachary Clark's Transactions in Driven Brands Holdings Inc. (Nasdaq: DRVN) securities:

| Type of Security | Date | Transaction | Quantity of Shares | Price per Share |
|---|---|---|---|---|
| Common Stock | 2/18/2026 | Buy | 51 | $17.10 |